```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF NEW JERSEY
```

|  |  |
|---|---|
| JAVON JENNINGS,<br><br>             Petitioner,<br><br>        v.<br><br>UNITED STATES OF AMERICA,<br><br>             Respondent. | HON. JEROME B. SIMANDLE<br><br>Civil No. 04-4215 (JBS)<br><br>**OPINION** |

APPEARANCES:

Javon Jennings
F.C.I. Fort Dix
#40404-050
P.O. BOX 7000
Fort Dix, NJ 08640
    Pro Se Petitioner

Christopher J. Christie
UNITED STATES ATTORNEY
    By: David A. Bocian
        Assistant U.S. Attorney
402 East State Street
Suite 430
Trenton, NJ 08608
    Attorney for Respondent

**SIMANDLE**, U.S. District Judge:

   This matter comes before the Court upon Respondent's motion to dismiss Petitioner Javon Jennings' § 2255 habeas petition.  In this petition, Petitioner seeks to vacate, set aside, or correct his sentence following pleading guilty to a two count information charging a violation of 18 U.S.C. 1951 and a violation of 18 U.S.C. 924(c).  Petitioner claims that his sentence violated the Supreme Court's holding in Blakely v. Washington, and that he was

denied the effective assistance of counsel in violation of the Sixth Amendment. For the following reasons, the government's motion will be granted and Jennings' petition for a writ of habeas corpus will be dismissed.

## I. BACKGROUND

### A. Facts

On November 20, 2000, police responded to an armed robbery at Sally's Salon in Cherry Hill, New Jersey. (Presentence Investigation Report at 6.) Irvin Juan Martinez later confessed to the armed robbery of the Salon and to stealing the vehicle used in the robbery. He told police that Jennings remained in the car as a lookout while he committed the armed robbery. Jennings later admitted to riding in the stolen vehicle with Martinez to the Salon and waiting in the vehicle while Martinez committed the robbery. (Id. at 7.)

On December 2, 2000, an attempted armed robbery occurred at Delta Gas station in Runnemede, New Jersey. (Id.) After subsequent police interviews, Jennings admitted driving to the Delta Gas Station in another vehicle stolen by Martinez, and remaining in the vehicle while Martinez attempted to rob the attendant with a semiautomatic pistol. (Id. at 8.) Jennings noted that he "kept a sawed-off shotgun in the car with him during this robbery attempt." (Id.)

Jennings also admitted to participating in the robbery of

the Gulf Gas Station in Collingswood, New Jersey on December 9, 2000 and the robbery of the 8/12 Mini Market in Westville, New Jersey on December 16, 2000.  (Id. at 8, 10.)  During the robbery of the Gulf Gas Station, a gas attendant was shot in the left leg.  Martinez later admitted that he shot the attendant when he failed to comply with his demands.  (Id.)  In both robberies, Jennings was armed with a sawed-off shot gun.  (Id. at 9, 11.)

On December 20, 2000, an armed robbery occurred at the Gas Mart in Haddon Township, New Jersey.  Based on the license plate number provided by the gas station attendant, Camden police identified the vehicle on December 21, 2000 and attempted to stop it.  However, Jennings, who was driving the vehicle, did not stop and attempted to escape, until ultimately crashing into a telephone pole.  (Id. at 12.)  Jennings and Martinez admitted to participating in the Gas Mart robbery.  (Id. at 13.)

### B. Procedural History

On April 1, 2002, Petitioner waived his right to an indictment (Pl. Hr'g Tr., April 1, 2002 at 4:23 to 5:9) and entered a guilty plea to a two count information charging Jennings with a "Hobbs Act robbery, on December 9, 2000, in violation of 18 U.S.C. § 1951" and with "using and carrying a sawed-off shotgun during and in relation to a crime of violence, on December 20, 2000, in violation of 18 U.S.C. § 924(c)."  (Plea Agreement, Resp't's Answer Ex. A.)  At the plea hearing, Jennings

3

was represented by Edward Crisonino, Esq.  (Pl. Hr'g Tr. at 2:15-16.)  During the hearing, the undersigned directed specific questions to Jennings under oath to determine whether he understood the charges against him, the potential maximum sentences, the Constitutional rights forfeited by pleading guilty, and that by pleading guilty he would be bound to that admission.  (Id. at 12:13 to 18:15, 23:19 to 32:12.)  Jennings affirmed that all stipulations attached to his plea agreement were true.  (Id. at 43:13-15.)  During the hearing, Jennings stated that he was guilty of Counts One and Two.  (Id. at 50:15-17, 51:3-4.)  His detailed testimony provided a factual basis for each essential element of Counts One and Two.  (Id. at 51:11 to 54:21.)  This Court then concluded that there was a factual basis for Counts One and Two and accepted Jennings' plea of guilty.  (Id. at 51:11 to 54:21, 62:2-3.)

   Pursuant to the plea agreement, the government decided not to pursue criminal charges against Jennings related to (1) armed robbery at Sally's salon, (2) attempted armed robbery of Delta Gas station, (3) armed robbery of Gulf Gas Station, (4) armed robbery of 8/12 Mini Market, (5) armed robbery of Gas Mart, and (6) the use of a firearm during and in relation to each of these robberies.  (Plea Agreement, Resp't's Answer Ex. A.)  The plea agreement also stated that the sentence to be imposed "is within the sole discretion of the sentencing judge, subject to the

provisions of the Sentencing Reform Act, 18 U.S.C. §§ 3551-3742 and the Sentencing Guidelines." (Id.)

On July 19, 2002, this Court sentenced Petitioner to a term of incarceration of 108 months for Count One and 120 months for Count Two, to be served consecutively. (Sentencing Tr., July 19, 2002, at 24: 14-19.) The Petitioner was also sentenced to a total of five years of supervised release upon release from prison. (Id. at 24:21-23.) Additionally, Jennings was ordered to make restitution in the total amount of $21,107.17. (Id. at 26:6-7.) The sentence imposed was within the U.S. Sentencing Guidelines range, as agreed by Jennings and the Government in the plea agreement. (Resp't's Answer ¶ 5.)

Following sentence, Petitioner filed a timely appeal, arguing that the District Court had improperly calculated the offense level. (Resp't's Answer ¶ 6.) Petitioner did not claim on appeal that the sentencing court relied upon erroneous information in determining that the facts of the case did not warrant a downward departure pursuant to U.S.S.G. § 5K2.12. On May 23, 2003, the Court of Appeals affirmed the judgment of conviction and sentence, and issued its mandate on June 16, 2003. (Id.)

On August 30, 2004, Jennings timely petitioned this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2255, requesting that this Court vacate, set aside or correct the

sentence for Counts One and Two.[1]  [Docket Item No. 1.]  On September 20, 2004, the Court entered an order advising Petitioner of his rights under United States v. Miller, [Docket Item No. 2] and on February 15, 2005, the Court entered an order to answer [Docket Item No. 3].  The government filed its answer on April 4, 2005.  [Docket Item No. 4.]

### C. Jurisdiction

A habeas petitioner who seeks to challenge the legality of his sentence must file a habeas corpus petition under 28 U.S.C. § 2255 with the sentencing court.  In this case, Jennings properly petitions this Court pursuant to 28 U.S.C. § 2255, since he attacks the legality of the sentence imposed by this Court.  Thus, this Court has jurisdiction to hear Jennings' petition.

## II. DISCUSSION

Petitioner first claims that his sentence violates the Supreme Court's holding in Blakely v. Washington.  Secondly, the Petitioner claims he was denied effective assistance of counsel because counsel did not present to the Court sufficient facts regarding the Petitioner's claim of coercion and duress and failed to move for a downward departure under U.S.S.G. § 5K2.12.  (Pet. Br. at 5.)  The Petition will be denied because (1) the Blakely decision does not apply retroactively to petitioners

---

[1] The timeliness of Petitioner's motion is not disputed by either party.

whose federal convictions were final before the Supreme Court's decision in United States v. Booker, and (2) the two prongs of the Strickland v. Washington test necessary to establish ineffective counsel are not satisfied.  466 U.S. 668 (1984).

### A. The Supreme Court's holding in Blakely does not apply to convictions which were final before Booker was decided.

Petitioner argues that the sentence imposed is in violation of the Sixth Amendment and the Supreme Court's Blakely decision. In particular, he argues that various Offense Characteristics contained in the Presentence Investigation Report ("PSI"), specifically those regarding the November 20, 2000 and December 2, 2000 offenses, "were neither found by a jury, or admitted to by the Movant during the entrance of the guilty plea." (Pet. Br. at 5.) Petitioner claims the PSI relied on these facts to increase his sentence under the U.S. Sentencing Guidelines.

The Petitioner's claim is governed by the Booker decision, not Blakely. Blakely held that "Washington State's determinate sentencing scheme . . . violated the Sixth Amendment right to a jury trial." Lloyd v. United States, 407 F.3d 608, 610 (3d Cir. 2005). Booker applied the Blakely decision to the U.S. Sentencing Guidelines. The Booker court held that the U.S. Sentencing Guidelines violated the Sixth Amendment to the Constitution whenever an enhanced sentence was based on facts (other than a prior conviction) found by the judge, rather than the jury or facts admitted by the defendant. United States v.

Booker, 543 U.S. 220, 245 (2005).  Therefore, any argument previously made under Blakely is "now, of course, governed by the intervening decision . . . in Booker, which concluded that the holding in Blakely applies to the Federal Sentencing Guidelines." Lloyd, 407 F.3d at 611.  Because Petitioner contends that judicial fact-finding led to an enhanced sentence under the U.S. Sentencing Guidelines, his claim is properly governed by Booker, not Blakely.

However, the Booker holding is not retroactively applicable to convictions which were final before Booker was decided.  In Lloyd v. United States, the Third Circuit concluded that the "Booker rule constituted a new rule of criminal procedure for the purposes of Teague."  Id.  However, the Lloyd court determined that the Booker rule was not within the "watershed rule" exception in Teague v. Lane, 489 U.S. 288, 310 (1989), joining the other courts of appeals that have considered the issue.[2]  Id. at 614.  Therefore, the Third Circuit held that "[b]ecause Booker announced a rule that is new and procedural, but not watershed, Booker does not apply retroactively to initial motions under §

---

[2] Teague's first exception to the bar on retroactive application is not relevant to the Booker rule.  Lloyd, 407 F.3d at 613 n. 5.  The first exception states that a "[n]ew rule should be applied retroactively if it places "'certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe....'"  Teague, 489 U.S. at 311 (quoting Mackey v. United States, 401 U.S. 667, 692 (1971)).

2255 where the judgment was final as of January 12, 2005, the date Booker issued." Id. at 615-16.

Petitioner's conviction was final before January 12, 2005. If a writ of certiorari is not filed, "the judgment of conviction does not become 'final' until the time for seeking certiorari review expires. A defendant has ninety days from the date on which the court of appeals affirms the judgment of conviction to file a petition for a writ of certiorari." Kapral v. United States, 166 F.3d 565, 570-71 (3d Cir. 1999).[3] Here, the Third Circuit affirmed the judgment of conviction and sentence on May 23, 2003. The ninety day period to file a writ of certiorari expired on August 21, 2003 and, thus, the judgment of conviction became final on that date. Therefore, Petitioner's conviction was final seventeen months before the Booker decision, and almost a year before Blakely.

### B. Petitioner's claim does not satisfy the Strickland test necessary to establish ineffective assistance of counsel.

Petitioner claims ineffective assistance of counsel on the grounds that his attorney withheld information from the Court regarding the extent of the Petitioner's coercion and duress.

---

[3] The ninety days begins when the court of appeals affirms the decision of the lower court, not when it issues its mandate. Supreme Court Rule 13.3 states that "[t]he time to file a petition for a writ of certiorari runs from the date of entry of the judgment or order sought to be reviewed, and not from the issuance date of the mandate (or its equivalent under local practice)." Supreme Court Rule 13.3. See also Clay v. Unites States, 537 U.S. 522, 526-27 (2003).

Petitioner further alleges that "counsel misinformed the Court when he stated he had discussed all aspects of coercion and duress with the Movant.  That is, he never told the Movant that such was a basis for a downward sentencing departure, nor what was needed to support it."  (Pet. Br. at 11.)  Petitioner argues that the Court would have been more likely to consider a downward departure under U.S.S.G. 5K2.12 had the Court been presented with this information of coercion or duress.

Both prongs of the <u>Strickland</u> test must be satisfied in order to establish ineffective assistance of counsel.  The <u>Strickland</u> test states that:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose results are reliable.

<u>Strickland</u>, 466 U.S. at 687.  When examining an attorney's performance, the standard to be applied "is that of reasonably effective assistance, considering all of the circumstances. . . . the defendant must show that counsel's representation fell below an objective standard of reasonableness."  <u>Id.</u> at 669.  In addition, the Court in <u>Strickland</u> noted that "[j]udicial scrutiny of counsel's performance must be highly deferential" and that a "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional

assistance." Id.  However, the Court cautioned that "a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id.  In order to show prejudice, "the proper standard requires the defendant to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id.

Here, the Court first finds counsel's performance was reasonable.  Petitioner's attorney, Mr. Crisonino, was aware of possible coercion and duress experienced by the Petitioner as a result of the actions of Mr. Martinez, counsel knew that the Petitioner's fear of Mr. Martinez was a reason Petitioner continued to participate in the robberies along with Mr. Martinez, and counsel was also aware that Mr. Martinez had pointed a gun at the Petitioner and threatened the Petitioner's mother.  (Sentencing Tr. at 5:18 to 6:10.)  However, Mr. Crisonino evaluated these facts and determined there was no legal basis for a coercion defense.  (Id. at 6: 10-12.)  In addition, counsel considered whether these facts justified a possible downward departure under 5K2.12, and after discussing the issue with the Petitioner, concluded that it was in the Petitioner's best interest to accept the plea agreement, which precluded the

Petitioner from asserting a claim for downward departure.

The following colloquy between the Court and counsel at the sentencing hearing illustrates that counsel's decision was strategic and reasonable:

> THE COURT: You mentioned that your client may have, to some degree, been put under duress by Martinez who at some point points a gun at Jennings.
>
> MR. CRISONINO: Yes, your Honor.
>
> THE COURT: Now, of course, I don't know if those facts are true, but if they were true, are you, have you examined whether there might be grounds for a departure under 5K2.12?
>
> MR. CRISONINO: Your Honor, as part of the plea agreement here, the parties agreed that there was no basis for an upward or downward departure. If I had filed that motion, we would have violated the plea agreement and then he would be back possibly facing a lot more time given the number of robberies involved here.
>
> I did look at that and consider it before we entered into the plea agreement, but I thought, given the nature of the charges he's facing, to have the prosecutor possibly ask the plea agreement be voided and he go to trial, the risk was greater than the possible reward.
>
> THE COURT: And did you discuss that with Mr. Jennings?
>
> MR. CRISONINO: Yes, I did, your honor.

(Id. at 7:8 to 8:4.)

Furthermore, as illustrated by the following colloquy, it is clear that the Petitioner understood the advantages of pleading guilty, comprehended the plea agreement, and accepted his

12

counsel's determination.

| | |
|---|---|
| THE COURT: | Have you explored with Mr. Crisonino whether its better for you to plead guilty or go to trial? |
| THE DEFENDANT: | Excuse me. |

(Off-the-record discussion)

| | |
|---|---|
| THE DEFENDANT: | Yes, your Honor, I fully understand. |
| THE COURT: | Have you weighed the pluses and minuses of pleading guilty versus going to trial, because those are options in this case? |
| THE DEFENDANT: | Yes. |
| THE COURT: | Have you weighed those options? |
| THE DEFENDANT: | Yes, I have, your Honor. |
| THE COURT: | Do you believe that it's better for you to plead guilty or go to trial? |
| THE DEFENDANT: | Its better if I plead guilty. |
| THE COURT: | Is that your personal decision? |
| THE DEFENDANT: | It's kind of difficult. |
| THE COURT: | I'm sorry. |
| THE DEFENDANT: | In my situation, your Honor, truthfully, it's a fair decision. |
| THE COURT: | It's what? |
| THE WITNESS: | A fair decision to plead guilty. |
| THE COURT: | Is it your personal decision to plead guilty? |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | Is anyone forcing you to plead guilty? |
| THE DEFENDANT: | No, sir. No, your Honor. |

13

> THE COURT:        Has anyone threatened you to make you plead guilty?
>
> THE DEFENDANT:    No, sir.

(Pl. Hr'g Tr. at 15:10 to 16:14.)  Mr. Crisonino explained to Petitioner the options available to him, and the advantages and disadvantages of accepting the plea agreement.  Morever, the Petitioner accepted his attorney's recommendations, fully understanding the consequences.

Furthermore, Petitioner knowingly and voluntarily waived his right to seek a downward departure pursuant to U.S.S.G. 5K2.12.  In the stipulations of the plea agreement, both Petitioner and Respondent agreed that "there [was] no basis for any upward or downward departure not set forth herein, and the parties further agreed that there [was] no basis for any upward or downward adjustment not set forth herein.  Accordingly, neither party will seek or argue for such a departure. . . ."  (Plea Agreement, Resp't's Answer Ex. A.)  Mr. Crisonino explained the stipulations to the Petitioner and he fully understood and accepted them:

> THE COURT:        And have you carefully gone over the provisions of the stipulations in Schedule A with your attorney?
>
> THE DEFENDANT:    Yes, your Honor.
>
> THE COURT:        Do you agree with these stipulations as part of your plea agreement?
>
> THE DEFENDANT:    Yes, your Honor.
>
> THE COURT:        And are the facts in these stipulations true

14

```
                        and correct?

THE DEFENDANT:          Yes, your Honor.

THE COURT:              And do you understand that by your accepting
                        these stipulations and by the government
                        accepting them as part of the plea
                        agreement, that they become binding on both
                        sides, that means that neither side can
                        argue to me something different with regard
                        to any of these facts at the time of
                        sentencing?  Do you understand that?

THE DEFENDANT:          Yes, your Honor.

THE COURT:              Now, there may be other aspects of your
                        sentencing that are not covered by these
                        stipulations.  If so, each side is free to
                        argue to me the facts or the law that
                        applies to other factors that may relate to
                        your sentence.  Do you understand that?

THE DEFENDANT:          Yes, your Honor.

                              ...

THE COURT:              Do you also realize you'll not be permit
                        [sic] to withdraw your plea of guilty on the
                        ground that the court rejects one or more of
                        these stipulations?

THE DEFENDANT:          Yes, your Honor.
```

(Pl. Hr'g Tr. at 44:6 to 45:3, 45:16-19.)  Fully understanding the stipulations, Petitioner voluntary accepted the plea agreement:

```
THE COURT:              Is it your personal decision to plead
                        guilty?

THE DEFENDANT:          Yes, sir.

THE COURT:              Is anyone forcing you to plead guilty?

THE DEFENDANT:          No, sir.  No, your Honor.
```

>THE COURT: Has anyone threatened you to make you plead guilty?
>
>THE DEFENDANT: No, sir.

(Id. at 16:7-14.)

In sum, the Court finds that counsel exercised his professional judgment that it was in the Petitioner's best interest to accept the plea agreement and forego trial. Therefore, counsel's actions meet the "reasonably effective assistance" requirement of Strickland. Strickland, 466 U.S. at 669.

Secondly, even if counsel were deficient, Petitioner is unable to show prejudice. In particular, he is unable to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. The Petitioner greatly benefitted from his attorney's suggestion that he accept the guilty plea; in return for the plea agreement, the government agreed not to pursue criminal charges regarding five armed robberies or attempted armed robberies. (Plea Agreement, Resp't's Answer Ex. A.)

At the Sentencing Hearing, the Court considered evidence of the Petitioner's alleged coercion by Martinez and concluded that no factual basis existed for a downward departure based on U.S.S.G. 5K2.12:

>THE COURT: All right. I see no reason to upset the parties' stipulation under these circumstances. I raise it in response to Mr. Crisonino's

statements a moment ago. I wanted to double-check that the parties had examined whether such a ground for departure might be available, whether it might be fruitful under 5K2.12. And I recognize that there can be cases where a defendant commits an offense because of serious coercion under circumstances not amounting to a complete defense, and that I would have authority to depart below the Guideline range. But before I could do so, I would have to measure the reasonableness of the defendant's actions, and I would also have to determine that the coercion was sufficiently serious to warrant departure because there would have to be a tenable threat of physical injury directed toward the defendant.

Now, in this case, the defendant makes a claim that at some point Martinez, who the defendant knew to be a dangerous person, pointed a gun toward his direction, although not making any explicit threat. Mr. Jennings hasn't explained why he continued to participate in the stream of robberies after that. Certainly his actions during the course of each of these robberies, show that he was a confederate of Martinez who was fully on board and who went along knowing that there would be, not only the potential for violence, but actual violence directed at the victims. And so it would appear on balance that while Mr. Jennings, his motives for doing it may have been mixed, that he did continue, and without substantial duress, to participate in the robberies. And I also understand that even if this were a close call, and I don't see it as being a close call, that this is something the defendant, the defense counsel, and the U.S. Attorney discussed before entering into the plea agreement. And that the defendant agreed, through his attorney, to relinquish his right to seek any downward departure, just as the government relinquished its right to charge a different and further crimes and to enhance the penalty that would be sought against Jennings.

I did want to take a moment, though, to address it, as I have, in case there's any question in the future about whether this 5K2.12 should have

17

>been raised or could have been raised.  My holding is that even if it were raised, it would not be a successful downward departure motion because I don't find, based upon the facts that are known to me, that there was substantial duress.  I find that it's impossible that there was any duress with regard to the first crime, and that its doubtful and unlikely that there was any meaningful duress with regard to the subsequent crimes.  Mr. Jennings, in other words, willfully allied himself with Mr. Martinez to the extent that makes this an ordinary case and not one for departure.  Mr. Jennings may have had misgivings about going along with Martinez, but he nonetheless did so.

(Sentencing Tr. at 9:13 to 11:13.)  The Court later noted the escalating nature of Petitioner's conduct as another reason to reject any downward departure:

>THE COURT: I do find, as an additional reason, that a coercion and duress departure would not have succeeded in this case, the fact that Mr. Jennings' conduct, as described in the presentence report, was indeed escalating and not tending to become less significant as time went by.  As the presentence report says, it was Mr. Jennings who brandished a loaded shotgun in the later robberies for which he's being sentenced today.  That's not the mark of someone who was incapable of withdrawing if he was really fearful of his codefendant.  And it also undercuts to a great degree Mr. Jennings' claim that he merely went along with Martinez.  I mean, he was an active participant to the point of, in the final robbery, brandishing the gun at the victim, and in a sense he did almost everything that Martinez did except pull the trigger in the course of these robberies.  And so for those further reasons, I find that a 5K2.12 departure, even if considered on the Court's own initiative, would not be proper because it's not supported factually.

(Id. at 22:18 to 23:10).  In short, the Court recognized that the

basis for a downward departure was not even a "close call." (Sentencing Tr. at 10:17.) This Court again finds that Petitioner would not have benefitted from the filing of a downward departure motion because the circumstances of his participation and his relationship with Martinez do not even come close to suggesting Petitioner acted out of duress or coercion — indeed, he participated willfully and voluntarily in an escalating pattern of violent robberies with Martinez as his full confederate. Therefore, Petitioner is unable to establish actual prejudice.

### III. CONCLUSION

For the above stated reasons, Petitioner's § 2255 habeas corpus petition to vacate, set aside, or correct his sentence will be denied. No certificate of appealability will be issued under 28 U.S.C. § 2253(c). The accompanying Order will be entered.

**July 19, 2006**                               **s/ Jerome B. Simandle**
DATE                                            JEROME B. SIMANDLE
                                                United States District Judge